L. & N. W. R. R. CO v. UNION INDEM-
NITY CO.

——

(November 18, 1929. Opinion and Decree.)
(February 5, 1930. Rehearing Refused.)

——

John R. Perez, Henry G. McMahon and John R. Holmes, of New Orleans, attorneys for plaintiff, appellee.

Manning W. Heard & William W. Ogden, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. Plaintiff, a railroad company, seeks to recover from defendant, a fidelity insurance company, a sum of money which the railroad company had paid to certain shippers to compensate them for losses sustained as the result of misappropriation of funds of the shippers by an employé of the railroad.

The fidelity company resists payment, claiming that the employé of the railroad at the time of the respective misappropriations was not acting within the scope of his employment as an employé of the railroad, but was acting rather as the agent of the shippers, and that thus the railroad company was not liable for the losses and should not have reimbursed the shippers.

The fidelity company contends that it agreed to indemnify the railroad company against only such losses as it would be liable for, and not against voluntary payments which for reasons of policy the railroad might wish to make, and that the only acts of employés, contemplated as being within the protection of the fidelity bond, were those within the scope of the employment of the respective employés.

The bond in question contained a list of railroad employés against whose acts the railroad was to be indemnified, and among the employés listed was Evan D. Fomby, cashier of the railroad at Magnolia, Ark.

Moore and Brown, shippers and consignees of lumber to and from Magnolia, Ark., for their own convenience, and without the knowledge or consent of the railroad, left with the said cashier checks signed by them, but in which the amounts were left blank, so that the cashier might, whenever collect shipments arrived, fill in correct amount of freight charges and deliver the shipments without delay.

There were two checks involved in the transaction which resulted in this loss. Under the agreed statement of fact, one of these checks had been made payable by Moore and Brown to "H. F. Greer, Agent," but there is some dispute as to whether under the agreed statement of fact the name of the payee had been filled in by Moore and Brown on the other check. At any rate, on two occasions Fomby fraudulently filled in checks for amounts which were not due, and, after indorsing the checks "H. F. Greer, Agt. F.," cashed the checks. He was authorized by the railroad to so indorse checks which might come into his possession for the payment of freight charges.

The two checks in question were for the amounts of $197.40 and $476.48, respectively. The smaller check was presumably to cover freight charges on car MC 63104 on which the charges had been entirely prepaid, and the larger was presumably to cover charges on a shipment on which only $246.48 was due; thus on the two transactions Moore and Brown were defrauded to the extent of $427.60.

Among the contentions of defendant we find the argument that the bond in question was intended to protect the railroad against direct loss only, and that, since this loss, if the railroad was liable at all, was indirect, in that it was first sustained by Moore and Brown and then by the railroad, there was no liability under the bond.

We think that the provisions of the bond itself fully answer this contention. The stipulation of the bond which is pertinent reads as follows:

"For direct pecuniary loss of money, securities or other personal property belonging to the employer or for which the employer is legally responsible to the owner."

Assuming temporarily that the employé was acting within the scope of his employment, it is manifest that, for the embezzlement of the funds, the employer, which is the railroad, would have been legally responsible to the owner, Moore and Brown, and that thus the loss is clearly "nominated in the bond."

But was Fomby acting within the scope of his employment in receiving from Moore and Brown, in advance, their checks in blank? We think not. Was he acting within the scope of his employment in filling in blanks left by them in checks? We think not.

He was the agent of the railroad for the purpose of receiving freight money due; not for the purpose of becoming a depositary for Moore and Brown; not for the purpose of receiving money not due. The checks which were left with him represented money. Moore and Brown put it into his power to defraud them. They turned over to him their property, which at the time it was turned over to him, was in no sense owing to the railroad company, and thus made him their agent.

"It is well-settled and familiar law that, if one affixes his signature to a printed blank for a promissory note, and intrusts it to the custody of another for the purpose of having the blanks filled up, and thus becoming a party to a negotiable instrument, he thereby confers the right, and such instrument carries on its face an implied authority, to fill up the blanks and complete the contract at pleasure, as to names, terms, and amount, so far as consistent with its printed words, * * * the person to whom a blank note is thus intrusted must be deemed the agent of the signer, and the act of perfecting the instrument is deemed the act of the principal. An oral agreement between such principal and agent, limiting the amount for which the note shall be perfected, cannot affect the rights of an indorsee who takes the note before maturity for value, in ignorance of such agreement, with a different amount written in it." Market, etc., Nat. Bank vs. Sargent, 85 Me. 349, 27 A. 192, 35 Am. St. Rep. 376; 8 C. J. 732; Wilkes vs. Pope, 4 Ga. App. 36, 60 S. E. 823; C. J. 731.

It is, however, contended by plaintiff that the loss resulted, not from the fraudulent act of Fomby in filling in the amount of the checks, but from the cashing of the checks through the indorsement by him of the name "H. F. Greer, Agt. F."

We do not think that the proximate cause of the loss was the authority given by the railroad to Fomby to indorse, but was rather the authority given by Moore and Brown to fill in, checks, which authority put it within his power to fill in the checks for amounts not due or for larger amounts than were due.

Even had Fomby not been authorized by the railroad to indorse the checks, it would have been a very simple matter for him to have defrauded Moore and Brown by merely taking out of his cash drawer sufficient cash to cover the amounts he desired to steal and by substituting therefor checks filled in by him for similar amounts.

In conclusion, and viewing the transaction as a whole, it appears to us that, when Moore and Brown left blank checks with Fomby, they constituted him their agent, and could not have recovered from the railroad company except by the voluntary assumption by the railroad of liability.

The trial court felt that plaintiff should recover, but, for the reasons which we have given, the judgment appealed from is annulled, avoided, and reversed, and there is now judgment in favor of defendant, dismissing the suit of plaintiff at its cost.